# Wytheville

FRANK P. WHITEHURST AND GRAYSON M. WHITEHURST, EXECUTORS OF THE ESTATE OF W. L. WHITEHURST, DECEASED v. MARIE CORE DUFFY.

June 14, 1943.

Record No. 2685.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*W. R. Ashburn*, for the plaintiffs in error.

*J. Hume Taylor*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

The question here involved is whether a written instrument under seal, executed by W. L. Whitehurst, guaranteeing the payment of a promissory note held by Marie Core Duffy, is barred by the statute of limitations. The underlying facts, which are not disputed, are as follows:

James C. Core, a resident of Northampton county, Virginia, died in 1921, leaving a will in which he bequeathed a legacy of $2,000 to his great-niece, Marie Core Duffy, who was then an infant about one year old. W. W. Old, Jr., and H. H. Pegues qualified as administrators of Core's estate. On November 24, 1922, the administrators, at the request of W. L. Whitehurst, loaned to C. R. White (Whitehurst's son-in-law) the sum of $2,000. The administrators took from White a note dated November 24, 1922, payable on August 15, 1923, in the sum of $2,000 bearing interest at the rate of six per cent. per annum, payable semi-annually, and secured by a deed of trust to W. W. Old, Jr., trustee, which was a second lien on certain real estate and a third lien on other real estate owned by White. At the time the loan was made, Whitehurst, without the knowledge of White, executed the following guaranty:

"WHEREAS, the estate of James C. Core, deceased, has loaned to C. R. White, the sum of two thousand dollars ($2,000.00) represented by note dated November 24th, 1922, payable on August 15, 1923, with interest;

"Now, THEREFORE, for value received I do hereby guarantee to the Estate of James C. Core, deceased, the payment of said note with interest thereon, or so much thereof as may be due after the sale of the property upon which same is a lien, it being understood and agreed that before my liability is determined the respective trustees shall have advertised and sold the property under and by virtue of the terms of the said deed of trust or of prior deeds of trust.

"Given under my hand and seal this 24th day of November, 1922.

"W. L. WHITEHURST (SEAL)."

The principal of the White note was not paid at maturity although interest thereon was regularly paid while the note was in the hands of the administrators. In the meantime Whitehurst, who was quite aware of the situation, on several occasions requested Old not to foreclose the deed of trust securing the note.

On November 16, 1926, the Core administrators filed with the commissioner of accounts an account of their transactions which showed that on January 17, 1926, the White note for $2,000 had been delivered to Marie Core Duffy, who was then five and one-half years old, in payment of the legacy to her. This account was promptly approved by the commissioner of accounts and the Circuit Court of Northampton county.

Actually the note and guaranty had not been delivered to the infant or to her guardian, but had been placed in an envelope marked "Property of Marie Core Duffy" and put in the safe-deposit box of Old & Brockenbrough, Attorneys, in the Citizens Bank of Norfolk. The note remained in this lockbox until the latter part of 1932 when it was delivered to H. H. Pegues, a relative of Marie Core Duffy, who, in April or May, 1933, forwarded it to Dr. William C. Duffy, the guardian of the infant. Some time later (the record does not show just when) the guardian received the written guaranty. But, in any event, it is conceded that both the note and the guaranty became the property of the infant upon the approval of the administrators' account. In the meanwhile W. L. Whitehurst had died on April 5, 1931.

On June 25, 1941, Marie Core Duffy became of age. A few months before, this foreclosure of the prior liens had consumed all of the equities in the properties which White had conveyed to secure the $2,000 note held by Miss Duffy, leaving nothing to be applied thereon.

On August 25, 1941, Miss Duffy sued Whitehurst's executors on the written guaranty. The executors filed special pleas alleging that the plaintiff's claim was barred by the statute of limitations. At the trial the lower court sustained the plaintiff's contention that her claim was not barred and

a judgment for her against the executors necessarily followed. To review this judgment the present writ has been allowed.

The principal contention of the Whitehurst executors is that the cause of action on the instrument of guaranty accrued and the statute of limitations thereon began to run on August 15, 1923, when the C. R. White note of $2,000, the primary obligation, then in the hands of the Core administrators, became due and was not paid; that the running of the statute of limitations was not suspended when the guaranty thereafter became the property of Marie Core Duffy, although she was at that time an infant; and that since the cause of action had accrued against Whitehurst prior to his death, it was barred in April, 1936, five years after the date of the qualification of his personal representatives, under Code, section 5810.

It is, of course, well settled that where a cause of action has accrued, and the statute of limitations has commenced to run thereon, the statute is not suspended because the cause of action or the instrument on which it is based thereafter becomes the property of an infant. In other words, the saving in favor of an infant or person under disability, such as is provided in Code, section 5823, is confined to disabilities existing when the right of action first accrues. *Hudson* v. *Hudson's Adm'r*, 6 Munf. (20 Va.) 352, 355; *Parsons* v. *McCracken*, 9 Leigh (36 Va.) 495, 501; *Blackwell's Adm'r* v. *Bragg*, 78 Va. 529, 536; Burks' Pleading and Practice, 3d Ed., section 210, p. 361; 4 Minor's Institute (1878 Ed.), p. 513; 6 Williston on Contracts, Rev. Ed., section 2012, p. 5655.

The controlling question here then is, Did the cause of action against Whitehurst accrue and the statute of limitations thereon begin to run while the guaranty was the property of the Core administrators? If so, then under the principles just stated, the claim against Whitehurst's executors is barred.

It will be observed that the guaranty expressly provides, "that before my liability is determined the respective trus-

tees shall have advertised and sold the property under and by virtue of the terms of the said deed of trust or of prior deeds of trust." Manifestly this is a conditional promise. Whitehurst, the guarantor, was not to be called upon to pay the note, or the balance due thereon, until it had been "determined" by a foreclosure of the deed of trust securing the note, or by foreclosures of prior deeds of trust on the properties, that the security was insufficient to liquidate the debt.

In 34 Am. Jur., Limitations of Actions, section 116, pp. 95, 96, it is said: "Where some condition precedent to the right of action exists, whether it is a demand and refusal or some other act or contingency, the cause of action does not accrue, and action thereon cannot properly be commenced; nor does the statute of limitations begin to run until that condition is performed. Thus, if the obligation to pay a debt or the time of payment is contingent on the performance of some act, the happening of some event, or the lapse of a specified period of time, the debtor is not in default, nor is the creditor entitled to call for performance until the condition is fulfilled, and the statute cannot begin to run until that time."

This principle is, however, subject to the well-recognized exception that "if the only act necessary to perfect the plaintiff's cause of action is one to be performed by the plaintiff, and he is under no restraint or disability in the performance of such act, he cannot indefinitely suspend the statute of limitations by delaying performance of that act. It is not the policy of the law to permit a party against whom the statute runs to defeat its operation by neglecting to do an act which devolves upon him in order to perfect his remedy against another." 34 Am. Jur., Limitations of Actions, section 116, p. 96. See also, 6 Williston on Contracts, Rev. Ed., section 2041, pp. 5718-19; 37 C. J., Limitations of Actions, section 324, pp. 953, 954.

The plaintiffs in error say that this exception or qualification to the general rule precisely fits the case at bar; that when the primary obligation, the note of C. R. White, be-

came due and was unpaid at its maturity, on August 15, 1923, the Core administrators, who then held the note, had the power and the right to perfect their cause of action by calling upon the trustee in the deed of trust securing the note to foreclose the property and apply the proceeds, if any, to the note, and by then calling upon W. L. Whitehurst to pay the balance due, in accordance with the terms of the guaranty; and that since the Core administrators had the means of thus perfecting their cause of action at that time, the statute of limitations commenced to run from that date.

While the question has not heretofore been presented to this court it has frequently been before others. There is respectable authority supporting the view, advanced by the plaintiffs in error, that the cause of action accrues for the purpose of setting the statute of limitations in motion as soon as the creditor, by his own act and in spite of the debtor, can make the demand payable. The leading case in support of this theory is *Palmer* v. *Palmer*, 36 Mich. 487, 24 Am. Rep. 605. This rule likewise prevails in Maine and Pennsylvania. See *Ware* v. *Hewey*, 57 Me. 391, 99 Am. Dec. 780; *Sanford* v. *Lancaster*, 81 Me. 434, 17 A. 402; *Pittsburg, etc., R. Co.* v. *Byers*, 32 Pa. St. 22, 72 Am. Dec. 770; *Rhine's Adm'rs* v. *Evans*, 66 Pa. St. 192, 5 Am. Rep. 364.

However, this view is not in accord with the weight of authority. In an annotation in 136 Am. St. Rep. 469, collecting a large number of cases on the subject, Mr. Freeman (at page 490) characterizes the rule adopted in Michigan, Maine and Pennsylvania, and exemplified in the cases just cited, as "the extreme doctrine". In 6 Williston on Contracts, Rev. Ed., section 2041, p. 5718, that distinguished author speaks of it in the same way, and states that the correct rule is laid down in *Campbell* v. *Whoriskey*, 170 Mass. 63, 48 N. E. 1070. In that case the highest court of Massachusetts, after reviewing cases from other jurisdictions, including those from Michigan, Maine and Pennsylvania, says (48 N. E., at page 1072):

■ " * * * We are of opinion that the true principle is that the time when the demand must be made depends upon the construction to be put upon the contract in each case. If the contract requires a demand without language referring to the time when the demand is to be made, it is as if the words 'within a reasonable time' were found in it. What is a reasonable time is a question of law, to be determined with reference to the nature of the contract and the probable intention of the parties as indicated by it. Where there is nothing to indicate an expectation that a demand is to be made quickly, or that there is to be delay in making it, we are of opinion that the time limited for bringing such an action after the cause of action accrues should ordinarily be treated as the time within which a demand must be made. See *Jameson* v. *Jameson*, 72 Mo. 640, and cases above cited. Such a rule seems fairly to apply the principles and analogies of the statute of limitations to the contract of the parties, and it is in accordance with the weight of authority in this commonwealth and elsewhere."

These principles were reasserted in the recent case of *Norwood Trust Co.* v. *Twenty-Four Federal Street Corp.*, 295 Mass. 234, 237, 3 N. E. (2d) 826, 828.

■ In *Washington Security Co.* v. *State*, 9 Wash. (2d) 197, 114 P. (2d) 965, 971, 135 A. L. R. 1330, it is said: "The weight of authority is also to the effect that where a right of action depends upon some act to be performed, the one whose duty it is to perform such act must do so within a reasonable time, and that a reasonable time, in the absence of circumstances justifying or excusing the delay, is the statutory period" for instituting suit on such cause of action.

In *Bass* v. *Hueter*, 205 Cal. 284, 270 P. 958, 959, after stating the rule that the plaintiff, when it is in his power to do so, must ordinarily perfect his conditional cause of action "in a reasonable time", the court says: "It has been uniformly held that unless there are peculiar circumstances affecting the question, a reasonable time is a period coincident with that provided in the statute of limitations for barring the action." See also, *Thompson* v. *Whitaker Iron*

Co., 41 W. Va. 574, 23 S. E. 795; *Andrews* v. *Andrews*, 170 Minn. 175, 212 N. W. 408, 411, 213 N. W. 899, 51 A. L. R. 542; *Kraft* v. *Thomas*, 123 Ind. 513, 24 N. E. 346, 18 Am. St. Rep. 345, 346; *Atchison, etc., R. Co.* v. *Burlingame Township*, 36 Kan. 628, 14 P. 271, 59 Am. Rep. 578; *Reizenstein* v. *Marquardt*, 75 Iowa 294, 39 N. W. 506, 9 Am. St. Rep. 477, 478, 1 L. R. A. 318; Burks' Pleading and Practice, 3d Ed., section 210, p. 351; 6 Williston on Contracts, Rev. Ed., section 2041, p. 5720; 37 C. J., Limitations of Actions, section 325, p. 954; 34 Am. Jur., Limitations of Actions, section 119, p. 98.

■ Unaided by precedent of our own, we adopt the majority view. Applying its principles to the case at bar we think that it was not incumbent upon the Core administrators to call upon the trustee in the deed of trust securing the C. R. White note to foreclose the property at the date of the maturity of the note, or that the cause of action against W. L. Whitehurst, the guarantor, commenced to run from that time. On the contrary, we think the Core administrators had a reasonable time, taking into consideration the nature and purposes of the contract of guaranty, after the maturity of the note, within which to demand a foreclosure.

In our opinion, a reasonable time within which the Core administrators should have taken steps to determine or fix the liability of the guarantor was measured by the time during which suit could have been maintained on the original note, the primary obligation—that is, before the latter became barred by the five-year statute of limitations. While the guaranty was under seal and was, therefore, subject to a ten-year limitation (Code, section 5810), it was a collateral undertaking for the purpose of securing the payment of the note in case the latter was not liquidated at maturity. It is reasonable to assume, we think, that the parties intended that steps should be taken to fix the liability of the guarantor before the claim against the primary debtor was barred. See *Shaw* v. *Silloway*, 145 Mass. 503, 14 N. E. 783, 787.

The primary obligation, having matured on August 15, 1923, and being subject to a five-year limitation (Code, sec-

tion 5810), would have been barred by the statute on August 15, 1928. Hence, had the Core administrators retained ownership of the guaranty, they would have had until the latter date to fix or determine the liability of the guarantor, Whitehurst, by compelling a foreclosure of the deed of trust securing the note, the primary obligation. Until this date was reached, under the principles which we have stated, the cause of action in favor of the Core administrators against Whitehurst on the guaranty would not have accrued and the statute of limitations would not have commenced to run thereon.

But, as we have seen, before that time, and before the cause of action accrued, and before the statute commenced to run on the guaranty it became the property of the infant, who did not become of age until June 25, 1941. Therefore, under Code, section 5823,[1] the infant had "the like number of years" after becoming of age "that is allowed to a person having no such impediment to bring the same after the right accrues". Since the claim of the infant was against the estate of a decedent, under the terms of Code, section 5810,[2] action thereon was limited to a five-year period from the date of the qualification of the Whitehurst executors, in case the cause of action accrued during the lifetime of the decedent, or to a five-year period after the accrual of the cause of action, should it have accrued after

---

[1] "Sec. 5823. Saving as to persons under disability.—If any person to whom the right accrues to bring any such personal action, or scire facias, or any such bill to repeal a grant, shall be at the time the same accrues, an infant, or insane, the same may be brought within the like number of years after his becoming of full age, or sane, that is allowed to a person having no such impediment to bring the same after the right accrues, or after such acknowledgment as aforesaid, except that it shall in no case be brought after twenty years from the time when the right accrued."

[2] "Sec. 5810. Limitation of personal actions generally.— * * * provided that the right of action against the estate of any person hereafter dying, or upon any such award or contract, which shall have accrued at the time of his death, or the right to prove any such claim against his estate in any suit or proceeding, shall not in any case continue longer than five years from the qualification of his personal representative, or if the right of action shall not have accrued at the time of the decedent's death, it shall not continue longer than five years after the same shall have so accrued; * * * ."

the death of the decedent. Construing Code. sections 5823 and 5810 together, we are of opinion that the defendant in error (the plaintiff below) had five years after reaching her majority within which to assert her claim against the decedent's estate. And this she has done.

What we have here said with respect to the time of the accrual of the cause of action and the commencement of the running of the statute of limitations on the guaranty does not, as suggested by counsel for the plaintiffs in error, run counter to the rule obtaining in this State that a note payable on demand is payable at once and that the statute of limitations commences to run thereon from its date. *Bacon's Adm'r* v. *Bacon's Trustees*, 94 Va. 686, 687, 27 S. E. 576, and cases there cited. This latter principle is not grounded on the theory that such a · note is a conditional promise to pay and unenforceable until after demand is made. On the contrary it is based upon the theory that such a note is an unconditional promise to pay, that no demand thereon is necessary to complete the cause of action, and that the obligation is due and payable under its delivery. See 5 Williston on Contracts, Rev. Ed., section 1289, pp. 3674-5; 1 Restatement of Law of Contracts, section 264, p. 379; 8 Am. Jur., Bills and Notes, section 278, p. 26.

The plaintiffs in error next contend that since the right of action on the C. R. White note, the primary obligation, was barred by the statute of limitations, the right of action on the guaranty was likewise barred.

In the recent case of *Fidelity, etc., Co.* v. *Lackland,* 175 Va. 178, 8 S. E. (2d) 306, we dealt with this identical question. We there pointed out that while there was authority to support the contention of the plaintiff in error, it had long since been settled by the decisions of this court, and by the great weight of authority, that the running of the statute of limitations against the primary obligation did not bar a cause of action on the contract of guaranty or suretyship.

On the whole we are of opinion that the trial court correctly ruled that the cause of action of the defendant in

error (the plaintiff below) was not barred by the statute of limitations. Accordingly, the judgment is

*Affirmed.*